FILED
2020 Mar-06 PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL MONROE,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **Case No.:** |
| **V.** | ) | |
| | ) | |
| **WAYNE'S FARMS DECATUR LLC DECATUR FRESH PROCESSING FACILITY,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **DEFENDANT(S).** | ) | |

**COMPLAINT**

## JURISDICTION

1. The Plaintiff sues for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act. The Plaintiff invokes this Court's jurisdiction to secure protection and to redress the deprivation of rights caused by the Defendant.

2. This Complaint seeks legal and equitable relief for the Defendant's retaliatory discharge in violation of Ala. Code § 25-5-11.1 brought pursuant 28 U.S. Code § 1367.

## PARTIES

3. Plaintiff, Michael Monroe, ("Plaintiff" or "Monroe") is a resident of Decatur, Morgan County, Alabama, and performed work for the Defendant in the

counties composing the Northern District of Alabama during the events of this case. Under 28 U.S.C. § 1391(b), venue for this action lies in the Northern Division.

4. Defendant Wayne's Farms Decatur LLC Decatur Fresh Processing Facility ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

5. Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. The Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

## FACTS

6. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

7. Plaintiff began his employment with Defendant on or about June 16, 2017, as a Lift Operator.

8. On or about July 10, 2017, Monroe was injured at work when a co-worker hit him in a work vehicle.

9. After the injury Monroe reported it to his Supervisor Tyler (LNU), but the supervisor did not fill out a First Report of Injury.

10. Monroe suffered for several weeks without the company filling out a First Report of Injury or sending him to a Workers' Compensation doctor.

11. In August, Monroe went to the doctor on his own and found he had bruised ribs and muscular injuries because of the incident.

12. Monroe went back to work and reported the injury, and after an investigation, the company gave him Workers Compensation and approved FMLA for his injuries besides the FMLA it already approved to care for his daughter.

13. Monroe's injury continued to flare up periodically, and each time he reported the injury to the company.

14. The company did not take the injuries seriously. The Plaintiff had to reiterate his requests to have his injuries treated.

15. Monroe continued to have flairs of the muscular injury due to the physical demands of the job.

16. Monroe took only about nine days off for his Workers' Compensation injury in addition to the time he was taking every other week for his daughter's FMLA covered health condition.

17. In February 2018, the company suspended Monroe from work for allegedly being insubordinate.

18. On that day the company alleged that he had refused to carry out an order given by a manager.

19. Monroe was not insubordinate, but other employees not taking FMLA or seeking Workers' Compensation benefits, including Soto (FNU), have been insubordinate but not disciplined.

20. Because of the incident, Monroe was suspended for three days without pay.

21. A day after the suspension, the company called Monroe back and said that he could come back to work because the situation was a "he said-she said" situation, but they docked his vacation time to cover the missed day.

22. Monroe continued to be singled out for scrutiny.

23. On or about April 17, 2018, Monroe was working in his work area.

24. Another employee came into the area and attempted to take the CO2 that Plaintiff had gathered for his work area to his area.

25. When Monroe noticed him, he calmly approached the individual and asked him to get the CO2 from the storage area because the CO2 he was taking was for Monroe's area.

26. Monroe helped the employee find the proper area to get the CO2 and helped him fill it up for his work area.

27. When Monroe and the other worker returned, another employee acted belligerently saying, "I would not have done a Motherfucking thing; you would not have told me to do shit."

28. Monroe remained calm until the other person continued to curse at him. Finally, after the man continued, Monroe responded in kind and told him to go get Thomas Goode, the Supervisor.

29. When Goode arrived, he never asked Monroe's side of the story, he just sent him to the office.

30. Later that day, Monroe was fired for allegedly creating a Hostile Work Environment.

31. The person who initiated the swearing did not get terminated.

32. Monroe had done nothing of the sort.

33. Other employees who have not taken FMLA or reported a Workers' Compensation injury including (FNU) Soto, have gotten in multiple verbal altercations while at work, including cursing out a supervisor and did not get terminated.

**COUNT ONE - FMLA RETALIATION**

34. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

35. During the 12-month period before July 10, 2017, Defendant employed Plaintiff for at least 1,250 hours of service.

36. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before July 10, 2017.

37. During the week of April 17, 2018, Defendant employed fifty or more employees, who worked within 75 miles of the location where Plaintiff worked.

38. On July 10, 2017, Plaintiff provided notice of unforeseeable FMLA leave to seek treatment for an on-the-job injury.

39. Plaintiff provided notice of his unforeseeable need of FMLA leave as soon as practicable due to his medical emergency.

40. Plaintiff also provided notice of his need for unforeseeable FMLA leave when he took days off for his own injuries.

41. Defendant terminated Plaintiff's employment on April 18, 2018.

42. Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which he needed treatment through his doctor from July 10, 2017, until April 17, 2018.

43. Defendant's employees also knew that Plaintiff was taking FMLA for his daughter's serious health condition.

44. Thomas Goode informed Plaintiff that Defendant terminated his employment.

45. Goode terminated Plaintiff's employment, in whole or part, because of Plaintiff's exercise of FMLA rights.

46. Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

**COUNT TWO WORKERS' COMPENSATION RETALIATORY DISCHARGE**

47. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if set forth fully herein.

48. Defendant and Plaintiff engaged in an employer/employee relationship.

49. On or about July 10, 2017, Plaintiff suffered an on-the-job injury.

50. Within minutes of Plaintiffs on-the-job injury, Defendant had notice of Plaintiff's on-the-job injury.

51. Defendant terminated Plaintiff's employment on April 17, 2018, while he was still undergoing treatment for his work-related injury.

52. Defendant willfully terminated Plaintiff for suffering an on-the-job injury and exercising of his right to report an injury that would have qualified him for workers' compensation benefits in violation of Alabama Code § 25-5-11.1.

53. Plaintiff has been damaged because of Defendant's retaliatory discharge by Defendant, suffering loss of pay and mental anguish.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at

the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Alabama Workers' Compensation Act;

C. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

D. Award him back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

E. Attorneys' fees and costs;

F. Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

G. Any different or additional relief as determined by the Court to which Plaintiff is entitled.

Kira Fonteneau (FON007)

**OF COUNSEL:**

The Fonteneau Firm LLC
A Member of the Five Points Law Group LLC
2151 Highland Avenue, Suite 205
Birmingham, Alabama 35205
T: 205.564.9005 F: 205.564.9006

**PLEASE SERVE DEFENDANT AS FOLLOWS**

**Wayne's Farms Decatur LLC Decatur Fresh Processing Facility**

**254 Ipsco Street**

**Decatur, AL 35601**